LESLIE ANN ASHE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ashe v. Commissioner
Docket No. 24010-92
United States Tax Court
T.C. Memo 1994-226; 1994 Tax Ct. Memo LEXIS 227; 67 T.C.M. (CCH) 2987; May 23, 1994, Filed *227 Leslie Ann Ashe, pro se. For respondent: Roberta Duffy. PATE
PATE
MEMORANDUM OPINION PATE, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's 1989 Federal income taxes of $ 2,421. The issue for our decision is whether Leslie Ann Ashe (hereinafter petitioner) received gross income in excess of the amount she reported on her timely filed Federal income tax return for 1989. [2] Petitioner resided in Cypress, California, at the time she filed her petition. *228 Petitioner was employed by Ratcliff Hoist Co. (hereinafter Ratcliff Hoist or the company) in its San Carlos, California, office from June 1981 until her employment was terminated in June 1986. Ratcliff Hoist is in the business of selling and maintaining various types of tools and equipment. Petitioner worked as an outside salesperson and adviser to Mr. Bruce Ratcliff (hereinafter Ratcliff), the president of Ratcliff Hoist. [3]
For over 20 years, petitioner and Ratcliff maintained an on and off personal relationship during which time he promised to marry her. From time to time, over this period, Ratcliff gave petitioner various sums of money. Petitioner testified that in 1989, when she was unemployed, she signed some IOU's to Ratcliff, but could not state the exact amounts thereof. Petitioner estimated that Ratcliff gave her no more than $ 3,000 in any one year, except in 1989 when he gave *229 her about $ 6,000. Despite the fact that she signed some IOU's, petitioner never expected that she would have to repay the money and considered all of the money given to her by Ratcliff over the years to have been gifts. An affiliate of Ratcliff Hoist, Ratcliff Company, Inc., maintained a defined benefit pension plan. Ratcliff Company, Inc. apparently is owned by Ratcliff's father, and is a separate entity from Ratcliff Hoist, which employed petitioner. Petitioner was aware of the Ratcliff Company, Inc. pension plan but, during her employment with Ratcliff Hoist, was told by Ratcliff that she was not covered under its provisions. Petitioner never applied for any pension distribution. In April 1989, 3 years after she was fired by Ratcliff from Ratcliff Hoist, Ratcliff summoned petitioner to his office. Upon her arrival, he presented her with two checks made payable to her, both of which were dated April 7, 1989. One of the checks was a cashier's check issued by Wells Fargo Bank in San Carlos, California, for $ 12,454. The other check was one for $ 2,262 issued by Ratcliff Company, Inc., and drawn on the same bank. While he held the checks in his hand, Ratcliff demanded that *230 petitioner endorse both checks over to him. Because Ratcliff previously had harassed her and caused her to suffer a mental breakdown, petitioner did as he demanded. Thereafter, Ratcliff deposited both checks to his personal bank account. On the same date, a third check for $ 1,635 payable to the Internal Revenue Service was issued by Wells Fargo & Co. in San Francisco, California. On her 1989 Federal income tax return, petitioner did not report the amounts of the three checks as gross income. In the notice of deficiency, respondent determined that petitioner received "IRA distributions" of $ 16,351 (the total of the three checks) and credited her with $ 1,635 of withheld income taxes (10% of the total of the three checks). Respondent now maintains that the checks constituted distributions to petitioner from the Ratcliff Company, Inc., pension plan and, as such, are includable in her gross income. In general, gross income includes "all income from whatever source derived" and section 61 specifically mentions pension income. Sec. 61(a)(11). Distributions to a taxpayer from a qualified pension plan are includable in the taxpayer's gross income in the year of receipt to the extent *231 provided in section 402(a)(1). Therefore, the primary issue in this case is whether petitioner received distributions from the Ratcliff Company, Inc. pension plan. [4]
Based on the record in this case, we find that petitioner never actually or constructively received the purported pension distribution represented by the three checks discussed above because: Petitioner never was employed by the Ratcliff Company, Inc., and *232 there is nothing in the record showing that she was covered under its pension plan; The cashier's check drawn on the Wells Fargo Bank in San Carlos, California, for $ 12,454 and the check drawn by the Ratcliff Company, Inc., for $ 2,262 were not drawn by a trustee of a pension plan, the name of the pension plan does not appear on the checks, and the checks were not issued until approximately 3 years after petitioner had left the employ of Ratcliff Hoist; The check payable to the Internal Revenue Service was drawn by Wells Fargo and Company in San Francisco, California, and does not appear to be related to any pension plan; Petitioner never had control over the funds purportedly paid to her; instead Ratcliff held on to the checks, intimidated petitioner into endorsing them, and then deposited the funds into his own bank account; Respondent did not introduce any evidence to support her determination in the notice of deficiency that during 1989 petitioner received an IRA distribution. Nor has respondent presented any evidence that petitioner received a pension distribution, not even the Form 1099-R she allegedly received from the Ratcliff Company, Inc.; [5] and When considering *233 the circumstances under which Ratcliff gave petitioner money over many years without interest and without demanding repayment, we agree with petitioner that such sums constituted gifts. For the reasons stated above, we find that petitioner did not receive a pension distribution in 1989 and, consequently, hold that she did not underreport her gross income for that year. Moreover, because we find that petitioner never received a $ 16,351 pension distribution in 1989, we also find that she is not entitled to be credited with the $ 1,635 in purported tax withholding. Consequently, we hold that there is neither a deficiency nor an overpayment in petitioner's Federal income taxes for 1989. Decision will be entered for *234 petitioner. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent also determined that petitioner was not entitled to an earned income credit. The earned income credit is a computational adjustment dependent upon our resolution of the primary issue stated above.↩
3. Although petitioner testified that she sold equipment for Ratcliff Hoist, she knew very little about its sales activities.↩
4. Respondent had petitioner sign a stipulation of facts which includes a paragraph stating that "The checks * * * represent Ratcliff Company, Inc.'s distribution of petitioner's pension plan". However, as discussed, infra↩, many of the facts presented at trial are at variance with the above stipulation. In addition, petitioner was unrepresented by counsel, is relatively unsophisticated, and has little knowledge of the tax laws. For these reasons, we refuse to be bound by that paragraph of the stipulation. .
5. Given the numerous inconsistencies in the evidence noted above, respondent should have investigated and then presented at least some evidence of the propriety of the issuance of the Form 1099-R. Without such evidence, we can only speculate as to what games Ratcliff was playing with the Government.↩